COSTALAW, A PROFESSIONAL CORPORATION
JOSEPH P. COSTA, ESQ [BAR No. 130131]
DARIUS ANTHONY VOSYLIUS [BAR NO. 175030]
17383 SUNSET BLVD., SUITE A-350
PACIFIC PALISADES, CA 90272
PHONE: (310) 394-6611
FAX: (310) 394-6612
JOSEPH.COSTA@COSTALAW.COM

ATTORNEYS FOR PLAINTIFFS
BIOZONE LABORATORIES, INC.
AND CREATIVE CONCEPTS HOLDINGS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA- SOUTHERN DIVISION

| | |
|---|---|
| BioZone Laboratories, Inc.;<br>Creative Concepts Holdings, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Beverly Glen Laboratories, Inc., Akira Kodama, Shinjiro Kawakami, Brian Charles Keller, aka Brian C. Keller, aka Brian Keller, Richard Estalella, and Does 1-10,<br><br>Defendants. | Case No.<br><br>Complaint for (1) Infringement of Registered Trademark; (2) Unfair Competition (15 U.S.C. §1125(a)); (3) Unfair Competition (Cal. Bus. & Prof. Code §17200); (4) Dissemination of false advertisements (15 U.S.C. §52); (5) Deceptive Trade Practices (15 U.S.C. §52); (6) False Advertising (Cal. Bus. & Prof. Code §17500); (7) Misappropriation of Trade Secrets (Cal. Civil Code §3426); (8) Dilution of a Registered Trademark (18 U.S.C. §1125); (9) Trafficking in Counterfeit Goods (18 U.S.C. §2320); (10) Importing of Counterfeit Products (18 U.S.C. §2323); (11) False Designation Of Origin/Unfair Competition or Misleading Advertising 15 U.S.C. §1125(a); (12) Tortious Interference With Business Expectancy; (13) California Common Law Unfair Competition; (14) Declaratory Relief; and (15) Misrepresentation<br>**Jury Trial Demanded** |

1.    Plaintiffs BioZone Laboratories, Inc. ("BioZone") and Creative Concepts Holdings, LLC ("CCH"), file this complaint against Beverly Glen Laboratories, Inc.

---

Complaint                                    1                        BioZone v. B.Glen, et al.

("B.Glen"), Akira Kodama ("Kodama"), Shinjiro Kawakami ("Kawakami"), Brian Charles Keller, aka Brian C. Keller, aka Brian Keller ("Keller"), Michael Estalella ("Estalella") and Does 1 to 10.

## JURISDICTION AND VENUE

2.     This Court has subject-matter jurisdiction over the federal claims under 15 U.S.C. §1121 (trademark), 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1338(b) (state law claims of unfair competition when joined with a substantial and related claim under the patent or trademark laws).

3.     This Court has personal jurisdiction over B.Glen because it has offices and ships, distributes, offers for sale, sells, and advertises its infringing products in California and in this district. This Court has personal jurisdiction over Kodama, Kawakami, and Keller because each of these Defendants resides in California, in this district. Upon information and belief, defendant Estalella is a resident of the State of Florida, however, at all relevant times, Estalella committed the acts alleged in this Complaint in California and in this district.

4.     Venue is proper under 28 U.S.C. §1391(c)(2) against B.Glen because it is a corporation that has a regular and established place of business in California, in this district. Venue is proper against Keller under 28 U.S.C. §1391(b)(1) because he is a resident of California and this district. Venue is proper against Kodama under 28 U.S.C. §1391(b)(1) because he is a resident of California and this district. Venue is proper against Kawakami under 28 U.S.C. §1391(b)(1) because he is a resident of California and this district and because venue over B.Glen is proper in this district. Venue is proper as to Estalella, in addition to all defendants, pursuant to 28 USC 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**PARTIES**

5.     Plaintiff BioZone is a Nevada corporation with a place of business at 580 Garcia Avenue, Pittsburg, California. Plaintiff CCH is a Delaware limited liability company. CCH was previously known as BioZone Holdings, Inc., at which time, in or around April 21, 2016, it entered into an asset purchase agreement with MusclePharm Corporation for BioZone Laboratories, Inc., the entity whose shares were being sold. BioZone Holdings, Inc. subsequent legally changed its name and corporate status to CCH.

6.     Upon information and belief, B.Glen is a California corporation with a regular and established place of business at 7711 Center Ave. Suite 100, Huntington Beach, CA 92647.

7.     Upon information and belief, Kodama is an individual residing at 19461 Surfset Dr., Huntington Beach, CA 92648. Kodama is the Chief Executive Officer ("CEO") of B.Glen.

8.     Upon information and belief, Kawakami is an individual residing at 264 Cultivate, Irvine, CA 92618.  Kawakami is the Chief Financial Officer ("CFO") of B.Glen.

9.     Upon information and belief, Keller is an individual residing at 5058 Nortonville Way, Antioch, CA 94531. Keller was the founder of Plaintiff's company and is currently the Chief Scientific Officer ("CSO") of B.Glen.

10.     Upon information and belief, Estalella is an individual residing at 1111 Brickell Bay Drive, Apt. 1210, Miami, FL 33131. During the relevant time period, Estalella was a high ranking executive at MusclePharm, during the time that Plaintiff CCH was acquiring its assets.

**PLAINTIFF BIOZONE'S ASSERTED TRADEMARKS ("Marks")**

11.     Plaintiff BioZone is the owner of a federal trademark registration ("Mark"), Reg. No. 3,151,205, issued by the United States Patent and Trademark Office ("PTO") on October 3, 2006, for the QUSOME Mark, for Pharmaceutical preparations sold as an integral component of nutraceuticals for the treatment of pain, arthritis, sports injuries.

inflammation, dry skin and dryness of mucous membranes; dietetic substances for human use, namely, food supplements, dietary food supplements, dietary supplements, nutritional supplements; herbal supplements and herbal remedies for pain, arthritis, sports injuries, inflammation, dry skin and dryness of mucous membranes, allergies and vitamin or mineral deficiencies; pharmaceutical preparations, namely, analgesic preparations, pharmaceutical preparations applied to the skin for treatment of pain, arthritis, sports injuries, inflammation, and dry skin; anti-inflammatory preparations and pharmaceutical preparations containing liposomes for use in the treatment of pain, arthritis, sports injuries, inflammation, dry skin and dryness of mucous membranes. Plaintiff BioZone's Mark, QUSOME, has been in use in commerce since September 4, 2003.

12.     Plaintiff BioZone is the owner of a federal trademark registration, Reg. No. 2,921,099, issued by the PTO on January 25, 2005, for the QUSOME Mark, for Non-medicated ingredient sold as an integral component of cosmetics and non-medicated skin care preparations. Plaintiff BioZone's Mark, QUSOME, has been in use in commerce since September 4, 2003.

13.     Plaintiff BioZone's "Asserted Trademarks" include but are not limited to Plaintiff BioZone's Trademark Reg. No. 2,921,099 for the QUSOME Mark (Exhibit 1) and Plaintiff BioZone's Trademark Reg. No. 3,151,205 for the QUSOME Mark (Exhibit 2).

14.     At least as early as 2003, Plaintiff BioZone began using the QUSOME Mark on products sold in the United States and worldwide. The QUSOME Mark quickly came to signify the quality and reputation of Plaintiff BioZone's products.

15.     Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§1058 and 1065, and this registration is incontestable.

## DEFENDANTS' ACCUSED PRODUCTS AND ACTIONS RELATED THERETO

16.     Upon information and belief, Keller founded Plaintiff BioZone's company in 1987 and invented the proprietary manufacturing processes behind these products. He

therefore had full knowledge of the proprietary methods to make Plaintiff BioZone's products.

17.     Upon information and belief, Keller engaged with B.Glen to become B.Glen's Chief Scientific Officer ("CSO").  Keller took Plaintiff BioZone's confidential and proprietary information, and Marks needed to create Plaintiff BioZone's products with him to B.Glen and thereafter, had said products manufactured without any involvement or approval of Plaintiff BioZone. Keller is deliberately, willfully and with the intent to infringe on Plaintiff BioZone's Marks and proprietary information by providing Plaintiff BioZone's trade secrets, know-how and other confidential proprietary information to B.Glen, Kodama, and Kawakami.

18.     Defendants, either alone or in conjunction with others, have infringed, contributed to infringement, and/or induced infringement of the Plaintiff BioZone's Marks using, selling and/or offering to sell, and/or causing others to use, sell and/or offer to sell, the Defendants' products: QuSome Lift, QuSome Lotion, QuSome Moisture Gel Cream, QuSome Moisture Rich Cream, QuSome Retino A, QuSome White Cream 1. ("Accused Products").

19.     Upon information and belief, B.Glen, Kodama, and Kawakami have been and are using, manufacturing, labeling, shipping and storing the Accused Products at their laboratory located at 7711 Center Ave. Suite 100, Huntington Beach, CA 92647 and offering the Accused Products for sale in the United States and in this district.

20.     Upon information and belief, B.Glen, Kodama, and Kawakami are infringing on Plaintiff's confidential proprietary information and Marks by operating internet websites with the domain names www.bglen.com, www.bglen.us and www.qusome.com, which are readily available to citizens in the United States and this district.  These websites offer the Accused Products for sale and delivery to citizens in the United States and in this district.

21.     Upon information and belief, Keller has participated in the website advertising for the Accused Products with B.Glen, Kodama, and Kawakami by appearing in those website advertising postings and knowingly, willfully, and deliberately participated jointly with the other Defendants to infringe on Plaintiff BioZone's confidential proprietary information and Marks in the United States and in this district.

22.     Upon information and belief, Defendants have knowingly, willfully, and deliberately disseminated advertisements regarding the Accused Products through websites including Facebook, Twitter, Amazon, Fishpond and eBay, which are readily available to citizens in the United States and this district.

23.     Upon information and belief, the Accused Products are labeled "Made in Japan" and imported to the United States.

24.     Upon information and belief, the Defendants are also advertising the Accused Products and their company, B.Glen, internationally.  An article entitled "Skincare specialist b.glen combats women's ageing problems with cutting-edge science" in the *South China Morning Star* published April 30, 2018 (Exhibit 3) reports:

> Through Beverly Glen's collaboration with renowned American pharmacist and drug delivery system authority, Dr Brian Keller, the company offers products that deliver the ingredients to the skin's deepest layers. Keller developed the proprietary penetration technology QuSome, which has a background that is recognized worldwide. Applied in various pharmaceuticals, it is used by b.glen in its signature products.

25.     Defendants are knowingly and willfully misappropriating Plaintiff BioZone's confidential proprietary information and infringing on Plaintiff BioZone's Marks.

## FIRST CAUSE OF ACTION

### (Infringement of a Registered Trademark (15 U.S.C. §1114))

### (BioZone Against All Defendants, Except Estalella)

26.    Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

27.    Defendants have used Plaintiff BioZone's Marks, QUSOME, in commerce by manufacturing, advertising and selling the Accused Products with the QUSOME Marks without the consent of Plaintiff BioZone, the registrant of said Marks.

28.    Defendants have manufactured, advertised, and sold the Accused Products with the QUSOME Marks in commerce in a manner that is likely to cause consumer confusion and deceive the public regarding the source, sponsorship, and/or affiliation of that Mark and products associated with the Mark. Defendant's sale of the infringing Accused Products is therefore unlawful and is causing irreparable harm to Plaintiff BioZone's QUSOME brand.

29.    Defendants' actions as described herein constitute direct and/or contributory trademark infringement in violation of 15 U.S.C. §1114(1)(a)-(b).

30.    As a proximate result of Defendants' trademark infringement, Plaintiff BioZone has been damaged in an amount exceeding $75,000.00 to be proven at trial.

31.    Plaintiff BioZone alleges upon information and belief that, as a proximate result of Defendants' trademark infringement, Defendants have unlawfully profited in an amount to be proven at trial.

32.    At all relevant times, Defendants acted intentionally and/or willfully in using Plaintiff BioZone's Marks in their advertising, knowing Plaintiff BioZone's Marks belong to Plaintiff BioZone, and that Defendants were not and are not authorized to use Plaintiff BioZone's Marks in advertising the Accused Products. Plaintiff BioZone is therefore entitled to recovery of treble damages pursuant to 15 U.S.C. §1117(b).

33.     Defendants' knowing, intentional and/or willful actions make this an exceptional case, entitling Plaintiff BioZone to an award of reasonable attorney fees pursuant to 15 U.S.C. §1117(a).

34.     Defendants' actions also constitute the use by Defendants of one or more "counterfeit marks" as defined in 15 U.S.C. §1116(d)(1)(B). Plaintiff BioZone therefore reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. §1117(c)(1) and/or (2).

35.     The acts of direct and/or contributory trademark infringement committed by Defendants have caused, and will continue to cause, Plaintiff BioZone irreparable harm unless they are enjoined by this Court and Plaintiff BioZone accordingly seeks injunctive relief against Defendants as allowed by law.

## SECOND CAUSE OF ACTION

### (Unfair Competition under Federal Law (15 U.S.C. § 1125 (a))

### (BioZone Against All Defendants, Except Estalella)

36.     Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

37.     Defendants have used the QUSOME Marks in manufacturing, advertising, and selling the Accused Products in such a way that is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of QUSOME with the Accused Products, when QUSOME is Plaintiff BioZone's brand that is separate from Defendants' Accused Products.

38.     Plaintiff BioZone hereby alleges federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' adoption and use of the Plaintiff BioZone's Marks, or approximations or simulations thereof, as hereinabove pleaded, constitutes use of a false designation of origin or a false representation, which wrongfully and falsely designates, describes or represents the origins of Defendants' products and business as originating from or being in connection with Plaintiff BioZone

when this is not the case, and thereby constitutes a false description or representation used in interstate commerce readily available to citizens in the United States and this district. Plaintiff BioZone has been and is continuing to be damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct will continue to damage Plaintiff BioZone unless enjoined by this Court. Based on Defendants' previous and continuing knowledge of Plaintiff BioZone's Federal Registered Marks and confidential proprietary information and continued activities, Defendants' federal unfair competition violation is willful.

## THIRD CAUSE OF ACTION

### (Unfair Competition (Cal. Bus. & Prof. Code § 17200))

### (Plaintiff BioZone Against All Defendants, Except Estalella)

39.    Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

40.    Plaintiff BioZone hereby alleges Defendants have committed fraudulent acts and/or conduct by fraudulently using Plaintiff BioZone's trademarks and thereby misleading consumers in California as to the source of the product, making misleading statements that Plaintiff BioZone is only a licensed manufacturer of the BioZone's product, when in fact Plaintiff BioZone is the sole owner of the Marks and confidential proprietary information for making the product and Defendants are neither the owners nor authorized by the Plaintiff BioZone in any manner. Such actions are misleading consumers since Defendants are not and have never been authorized by Plaintiff BioZone to make, manufacture, distribute, sell, advertise, or offer to sell Plaintiff BioZone's confidential proprietary penetration technology, and the QUSOME Marks.

41.    Defendants have knowingly, willfully, and deliberately committed fraudulent acts and/or conduct that falsely represents, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public to believe that the unauthorized products imported, exported, manufactured, reproduced, distributed, assembled, acquired,

purchased, offered, sold, transferred, brokered, consigned, distributed, stored, shipped, marketed, advertised and/or promoted by Defendants originate from BioZone, or that said merchandise has been sponsored, approved, licensed by, or associated with BioZone or is in some way, connected or affiliated with BioZone to compete unfairly against Plaintiff BioZone.  Plaintiff BioZone has been and is being damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct will continue to damage Plaintiff BioZone unless enjoined by this Court.  Based on Defendants' previous and continuing knowledge of Plaintiff BioZone's Marks, confidential proprietary information and sales of their products, Defendants' California unfair competition violation is willful under California Business and Professions Code sections 17200 - 17209 ("UCL") and affected consumers are entitled to an order from this Court designed to restore through an appropriate disgorgement of profits Defendants' ill-gotten gains .

## FOURTH CAUSE OF ACTION

### (Dissemination of False Advertisements (15 U.S.C. §52))

### (BioZone Against All Defendants, Except Estalella)

42.     Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

43.     Plaintiff BioZone hereby alleges Defendants have knowingly, willfully, and deliberately disseminated false advertisements through websites including Facebook, Twitter, Amazon, Fishpond and eBay which are readily available to citizens in the United States and this district.  The advertisements knowingly, willfully, and deliberately disseminated by Defendants used Plaintiff BioZone's distinctive Marks. Defendants know that they have no right to use those Marks. The effect of the dissemination of these false advertisements by Defendants is negative on consumers as it is meant to confuse, mislead, or deceive purchasers, customers, or members of the public to believe

that the unauthorized products imported, exported, manufactured, reproduced, distributed, assembled, acquired, purchased, offered, sold, transferred, brokered, consigned, distributed, stored, shipped, marketed, advertised and/or promoted by Defendants originate from BioZone, or that said merchandise has been sponsored, approved, licensed by, or associated with BioZone or is in some way, connected or affiliated with BioZone to compete unfairly against Plaintiff BioZone.

44.    Plaintiff BioZone has been and is being damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct will continue to damage Plaintiff BioZone unless enjoined by this Court.  Based on Defendants' previous and continuing knowledge of Plaintiff BioZone's Marks, confidential proprietary information and continued sales of their products, Defendants' knowingly, willfully, and deliberately disseminated false advertisements offering for sale the Accused Products through websites including Facebook, Twitter, Amazon, Fishpond and eBay is readily available to citizens in the United States and this district.

## FIFTH CAUSE OF ACTION

### (Deceptive Trade Practices (15 U.S.C. §52)

### (BioZone Against All Defendants, Except Estalella)

45.    Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

46.    Defendants' actions set forth herein constitute continued violations of the Federal Uniform Deceptive Trade Practices Act (UDTPA) (15 U.S.C. §52, et seq.).

47.    As a proximate result of Defendants' deceptive trade practices, Plaintiff BioZone has been damaged in an amount exceeding $75,000.00 to be proven at trial.

48.    Plaintiff BioZone alleges upon information and belief that, as a proximate result of Defendants' deceptive trade practices, Defendants have unlawfully profited in an amount to be proven at trial.

49.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiff BioZone irreparable injury for which Plaintiff BioZone has no adequate remedy at law. Therefore, Plaintiff BioZone is entitled to injunctive relief.

50.     Defendants have willfully and knowingly engaged in deceptive trade practices in violation of UDTPA (15 U.S.C. 52, et seq.), and therefore Plaintiff BioZone is entitled to an award of reasonable attorney fees pursuant to UDTPA (15 U.S.C. 52, et seq.).

## SIXTH CAUSE OF ACTION

### (False Advertising (Cal. Bus. & Prof. Code § 17500))

### (BioZone Against All Defendants, Except Estalella)

51.     Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

52.     Plaintiff BioZone hereby alleges Defendants have knowingly, willfully, and deliberately made and are continuing to make false or misleading statements in connection the Accused Products, and Defendants knew, or should have known, that the statements were false or misleading before advertising and offering to sell the Accused Products through websites including Facebook, Twitter, Amazon, Fishpond and eBay, which are readily available to citizens and residents in California and this district.  The false or misleading statements knowingly, willfully, and deliberately made by Defendants in their advertisements used Plaintiff BioZone's distinctive registered trademarks for which Defendants know that they have no right to use, and those registered trademarks represent Plaintiff BioZone's products that are protected by confidential proprietary information that Defendants have no right to use.  The effect of the false or misleading statements of these advertisements by Defendants is negative on consumers as it will confuse, mislead, or deceive purchasers, customers, or members of the public to believe that the unauthorized products imported, exported, manufactured, reproduced, distributed, assembled, acquired, purchased, offered, sold, transferred, brokered, consigned.

---

Complaint                                    12                      BioZone v. B.Glen, et al.

distributed, stored, shipped, marketed, advertised and/or promoted by Defendants originate from BioZone, or that said merchandise has been sponsored, approved, licensed by, or associated with BioZone or is in some way, connected or affiliated with BioZone to compete unfairly against Plaintiff BioZone.

53.   Plaintiff BioZone has been and is being damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct will continue to damage Plaintiff BioZone unless enjoined by this Court.  Based on Defendants' previous and continuing knowledge of Plaintiff BioZone's Marks, confidential proprietary information and sales of their products, Defendants' knowingly, willfully, and deliberately making false or misleading statements in their advertisements offering for sale the Accused Products through websites including Facebook, Twitter, Amazon, Fishpond and eBay is willful and unlawful under California False Advertising Law (Bus. & Prof. Code, §§ 17500, et seq.) and Plaintiff BioZone is entitled to an order to restore to consumers Defendant's profits obtained through these ill-gotten means.

## SEVENTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets (Cal. Civil Code §3426))

### (BioZone Against All Defendants, Except Estalella)

54.   Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

55.   Plaintiff BioZone hereby alleges Defendants misappropriated Plaintiff BioZone's trade secrets and know-how which permitted them to counterfeit the Plaintiff BioZone's products and manufacture the Accused Products.  Defendants improperly acquired Plaintiff BioZone's trade secrets, including its confidential proprietary information, Marks, and other intellectual property not otherwise commonly known to members of the public through Keller who did not have permission to disclose such confidential and proprietary information and used this improperly attained information for Defendants' collective benefit and gain.

56.   Defendants knowingly and intentionally misappropriated Plaintiff BioZone's trade secrets and are still committing an intentional misappropriation of such trade secrets by infringing on Plaintiff BioZone's patents and registered trademarks. Plaintiff BioZone is thereby entitled to punitive damages against Defendants.

57.   As a result of Defendants' intentional misappropriation of Plaintiff BioZone's trade secrets, Plaintiff BioZone has been harmed in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (Dilution of a Registered Trademark (15 U.S.C. §1125)

### (BioZone Against All Defendants, Except Estalella)

58.   Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

59.   By reason of Defendants' infringing on Plaintiff BioZone's registered trademarks, Plaintiff BioZone has suffered damage by dilution under the Lanham Act (15 U.S.C. § 1051, et seq.). Plaintiff BioZone's registered QUSOME Mark is well-known. Defendants' infringement weakens the consumer's perception and blurs Plaintiff BioZone's Marks and tarnishes the QUSOME Mark's reputation by being associated with Defendants' products. This has caused objective actual damages to Plaintiff BioZone.

60.   By reason of the foregoing, Plaintiff BioZone has suffered and continues to suffer damages in in an amount exceeding $75,000.00 to be proven at trial.

## NINTH CAUSE OF ACTION

### (Trafficking in Counterfeit Goods (18 U.S.C. §2320)

### (BioZone Against All Defendants, Except Estalella)

61.   Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

62.   Plaintiff BioZone hereby alleges that Defendants have been and are continuing to intentionally advertise and sell the Accused Products on Defendants' website.

www.bglen.us, which is readily available to citizens in the United States and this district. Defendants' Accused Products, which are advertised and sold on this website, are counterfeit goods. Delivery to citizens in the United States and in this district of these counterfeit goods is a violation of 18 U.S.C. §2320.

63.     Defendants do not own and are not authorized by Plaintiff BioZone to use the trademarks QUSOME of U.S. Registration Number 2921099 and U.S. Registration Number 3151205. Defendants are knowledgeable that they do not own and are not authorized by Plaintiff BioZone to use the marks.  Defendants are knowingly, willfully, and deliberately trafficking in counterfeit goods under the Lanham Act.

64.     Because of Defendants' advertising and sale of the Accused Products, which are counterfeit goods, Plaintiff BioZone has suffered damages in an amount to be proven at trial. Defendants are in violation for trafficking in counterfeit goods for each Accused Product sold and should be charged with the maximum penalties under 18 U.S.C. § 2320.

## TENTH CAUSE OF ACTION

### (Federal Importing of Counterfeit Products (18 U.S.C. §2320))

### (BioZone Against B.Glen, Kodama and Kawakami)

65.     Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

66.     Plaintiff BioZone hereby alleges that Defendants have been and are continuing to import counterfeit products as evidenced by the advertising and sale of the Accused Products on Defendants' website, www.bglen.us.  These Accused Products are counterfeit goods in violation of 18 U.S.C. §2320.

67.     The Defendants' www.bglen.us website states that the Accused Products are "Made in Japan" and offers "Delivery to anywhere in the U.S. free of charge".  If all the products including the Accused Products are "Made in Japan" they cannot be delivered to citizens in the U.S. without being imported.

68.     In importing the Accused Products, which are counterfeit goods, Defendants are in violation of the Lanham Act.

69.     Because of Defendants' advertising and sale of the Accused Products, which are counterfeit goods, Plaintiff BioZone has suffered damages in an amount to be proven at trial. Defendants are in violation for trafficking in counterfeit goods for each Accused Product sold and should be charged with the maximum penalties.

## ELEVENTH CAUSE OF ACTION

### (False Designation of Origin/Unfair Competition or Misleading Advertising

### (15 U.S.C. §1125(a))

### (BioZone Against B.Glen, Kodama and Kawakami)

70.     Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

71.     Defendants' actions as described herein constitute a direct and/or contributory violation of 15 U.S.C. §1125(a)(1)(A), as such actions are likely to: (a) cause confusion; (b) cause mistake; and/or (c) deceive as to the affiliation, connection, or association of Defendants with Plaintiff BioZone and/or to the origin, sponsorship, and/or approval of such goods by Plaintiff BioZone.

72.     As a proximate result of Defendants' trademark infringement, Plaintiff BioZone has been damaged in an amount exceeding $75,000.00 to be proven at trial.

73.     Plaintiff BioZone alleges upon information and belief that, as a proximate result of Defendants' trademark infringement, Defendants have unlawfully profited in an amount to be proven at trial.

74.     Defendants' acts of violating Section 1125 have caused, and will continue to cause, Plaintiff BioZone irreparable harm unless they are enjoined by this Court.

# TWELFTH CAUSE OF ACTION

## (Tortious Interference with Business Expectancy)

## (BioZone Against All Defendants, Except Estalella)

75.　Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

76.　As the developer, manufacturer and seller of genuine BioZone products, Plaintiff BioZone possesses a valid business expectancy, to wit: the expectation to sell and profit from BioZone products without the interference of third parties.

77.　As the owner of Plaintiff's Marks and other intellectual property, Plaintiff possesses a valid business expectancy to solely, with the exception of licensees, use such intellectual property for legitimate business purposes.

78.　Upon information and belief, Defendants knew or should have known of Plaintiff BioZone's valid business expectancies regarding the BioZone product, Plaintiff BioZone's Marks, and Plaintiff BioZone's other intellectual property.

79.　By knowingly and willingly: (a) selling counterfeit products; (b) allowing third-parties to sell counterfeit products under Plaintiff's Marks; and (c) unlawfully using and infringing Plaintiff BioZone's Marks and other intellectual property, Defendants intentionally interfered with Plaintiff BioZone's valid business expectancies.

80.　Defendants cannot provide any legitimate justification for their intentional interference with Plaintiff BioZone's valid business expectancies.

81.　As a proximate result of Defendants' intentional interference with Plaintiff BioZone's valid business expectancies, Plaintiff BioZone has been damaged in an amount exceeding $75,000.00 to be proven at trial. Defendants' acts were also performed with malice and a conscious disregard for the rights of Plaintiff BioZone. Plaintiff BioZone is therefore entitled to an award of exemplary damages against Defendants as allowed under California Civil Code Section 3294.

## THIRTEENTH CAUSE OF ACTION

### (State Common Law Unfair Competition)

### (BioZone Against All Defendants, Except Estalella)

82.   Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

83.   Plaintiff BioZone hereby alleges Defendants have committed acts and/or engaged in conduct by unlawfully using Plaintiff BioZone's trademarks and thereby misleading consumers in California as to the source of the product, making misleading statements that Plaintiff BioZone is only a licensed manufacturer of the Plaintiff BioZone's product, when in fact Plaintiff BioZone is the sole owner of the Marks and confidential proprietary information for making the product and Defendants are neither the owners nor authorized by the Plaintiff BioZone in any manner.  Such actions are misleading consumers since Defendants are not and have never been authorized by Plaintiff BioZone to make, manufacture, distribute, sell, advertise, or offer to sell Plaintiff BioZone's confidential proprietary penetration technology, and the QUSOME Marks.

84.   Defendants have knowingly, willfully, and deliberately committed fraudulent acts and/or conduct that falsely represents, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public to believe that the unauthorized products imported, exported, manufactured, reproduced, distributed, assembled, acquired, purchased, offered, sold, transferred, brokered, consigned, distributed, stored, shipped, marketed, advertised and/or promoted by Defendants originate from BioZone, or that said merchandise has been sponsored, approved, licensed by, or associated with BioZone or is in some way, connected or affiliated with BioZone to compete unfairly against Plaintiff BioZone.  Plaintiff BioZone has been and is being damaged by such violation and has no adequate remedy at law. Defendants' unlawful and willful conduct

will continue to damage Plaintiff BioZone unless enjoined by this Court. Plaintiff BioZone is likewise under California case law entitled to recover its damages from Defendants incurred as a result of Defendants' unfair competition.

## FOURTEENTH CAUSE OF ACTION

### (Declaratory Relief, BioZone against Defendants, Except Estalella)

85. Plaintiff BioZone hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

86. Plaintiff BioZone contends that the facts presented in this Complaint are irrefutable and are not a hypothetical state of facts and create an appropriate case or controversy under 28 U.S.C. §2201.

87. Plaintiff BioZone requests the court provide Plaintiff with Declaratory Relief and that a declaratory judgment be granted under 28 U.S.C. §2201. Should the court not find for declaratory judgment then Plaintiff BioZone will proceed as directed by the court to jury trial.

## FIFTEENTH CAUSE OF ACTION

### (Misrepresentation, CCH against Keller and Estalella)

87. Plaintiff CCH hereby incorporates by reference each of the allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

88. On or about April 21, 2016, MusclePharm Corporation ("MusclePharm") as seller and CCH as buyer entered into a purchase and sale transaction whereby CCH purchased all of the shares in and to BioZone. At the time of this sale, Keller was the Chief Scientific Officer for MusclePharm and was, on information and belief, a member of MusclePharm's board of directors and Estalella was on information and belief a controlling executive and officer of MusclePharm.

89. As part of the sale transaction to CCH, Keller presented CCH with a set of BioZone projections that was represented by Keller to be a conservative estimate of the

---

Complaint                                   19                    BioZone v. B.Glen, et al.

the revenue projections for BioZone over the following year. These projections were represented to have been based upon an existing factual sales history. In addition, these projections identified existing profit margins for the identified products.

90.    In or around April 2017, Keller disclosed to CCH ownership that Keller at the urging of Estalella and others was instructed to fabricate these projections. In reality, Keller had projected revenues at 12 million dollars for the upcoming year, but that Keller was subsequently persuaded by Estalella and others at MusclePharm to increase the revenue numbers to 17 million dollars, and to represent to CCH that these were actual good faith projections of the revenues to be received by BioZone within the next year. Keller did this and CCH relied in good faith and justifiably in concluding that these were good faith revenue projections and agreed to pay a price for the BioZone shares that was higher than if they knew that the actual projections were only 12 million dollars (the "Deliberately Inflated Projections").

91.    During the time when Keller was the Chief Scientific Officer and a member of the board of directors for BioZone and prior to the sale of BioZone's shares to CCH, Keller engaged in acts with others designed to falsely inflate the value of the shares of BioZone. In or around September 7, 2018, the Federal Securities and Exchange Commission filed Case No. 1:18-cv-08175 against Keller and others, alleging that Keller intentionally made misstatements about future QUSOME product developments that would dramatically increase the public's perception of the value of BioZone's shares. Keller's misrepresentations that formed the basis for the SEC Complaint were likewise made to CCH prior to its purchase of BioZone. Specifically, Keller informed CCH prior to the time that it purchased BioZone that he was enhancing and amending the Qusomes technology, including by various combinations and uses, such as making it ingestible. Keller represented that this would fuel significant increases in sales and was a factor in valuing BioZone at a price higher than its revenues would otherwise suggest. He likewise represented that the Qusomes patent was under-exploited because he had been held

back by MusclePharm and that post-closing, CCH would see a significant increase in the true value of Qusomes. This was false and known to be false at the time that Keller made these misrepresentations.  Upon information and belief, Keller subsequently accepted responsibility for the allegations made against him in the SEC Complaint, which became known to CCH only recently. CCH relied upon Keller's misstatements regarding the future QUSOME product developments when agreeing to purchase the shares of BioZone from MusclePharm for the price agreed upon in the purchase agreement between MusclePharm and CCH.

92.     Keller at all relevant times knew, or should have known, that CCH was relying on his statements regarding future QUSOME developments in agreeing upon a purchase price for the shares of BioZone. In reality, Keller's statements were false and he knew that at the time he made these false statements to CCH, and others, and that no future developments to QUSOME were contemplated and that all research and development in connection with the QUSOME product had stopped. CCH was justified in relying upon the truth of Keller's statements, as he was the Chief Scientific Officer at BioZone, and the original developer of the QUSOME product.  As a result of CCH's justifiable reliance as set forth within this paragraph, CCH accepted an inflated purchase price for the shares of BioZone, that it would not have paid had it known of the falsity of Keller's statements and such comments have proximately caused damage to CCH in an amount to be proven at trial. In addition, the acts of Keller and Estalella in jointly creating the Deliberately Inflated Projections constituted a civil conspiracy to engage in fraud against CCH, such that both Keller and Estalella are jointly and severally responsible for all damages to CCH arising from the Deliberately Inflated Projections. Estalella was aware that Keller planned to disclose the Deliberately Inflated Projections to CCH and both Estalella and Keller intended to mislead CCH to purchase BioZone at an intentionally inflated price. These acts constitute a civil conspiracy to defraud CCH in connection with its purchase of the BioZone shares triggering joint and several liability of both

Keller and Estalella as a result of the Deliberately Inflated Projections. CCH first learned of the activities of Estalella and Keller on April 17, 2017, when post acquisition it learned that the value of BioZone's assets were not as represented. In an e-mail of such date, Keller admitted this to CCH stating, in pertinent part that Estalella and his financial team saw Keller's projections and instructed him to inflate them without having any legitimate basis for doing so other than each of their own personal financial gains. In July 2017, CCH sold its interests in Biozone for an estimated loss of approximately 14 million dollars. This loss was caused by the numerous falsehoods that were made to CCH by Keller and Estalella, in getting CCH to overpay for BioZone.

93.   Defendant Keller's and Estalella's acts were also performed with malice and a conscious disregard for the rights of Plaintiff CCH. Plaintiff CCH is therefore entitled to an award of exemplary damages against Keller as allowed under California Civil Code Section 3294.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff BioZone Laboratories, Inc., hereby respectfully requests the following relief against Defendants, inclusive and each of them as follows:

    a. For an order finding that Defendants have willfully infringed the Trademark US Registration Number 3151205 and the Trademark US Registration Number 2921099;

    b. For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the Trademark US Registration Number 3151205, and from inducing others to infringe the Trademark US Registration Number 3151205;

c. For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the Trademark US Registration Number 2921099, and from inducing others to infringe the Trademark US Registration Number 2921099;

d. Defendants and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined from:

1) advertising, marketing, promoting, offering for sale, distributing, or selling the Infringing Accused Products;

2) using the Infringing Accused Products imitation of Plaintiff's QUSOME Mark on or in connection with any of Defendants' goods;

3) using the Plaintiffs Asserted Trademarks or any other copy, reproduction, colorable imitation, or simulation of Plaintiffs Asserted Trademarks on or in connection with Defendants' goods;

4) using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Plaintiffs Asserted Trademarks, names, or logos;

5) using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by Plaintiff, or are in any way connected or related to Plaintiff;

6) using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Plaintiff's trademarks, names, or logos;

7) passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Plaintiff, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

8) advertising, promoting, offering for sale, or selling the Infringing Accused Products or other similar goods.

e. Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Infringing Accused Products, or any other goods bearing the Infringing QuSome Mark or any other confusingly similar imitation of Plaintiff's QUSOME Mark that are in Defendants' possession or have been shipped by Defendants or under its authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

f. Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint, except where such damages are not otherwise available under California Business & Professions Codes §§17200 and 17500. As to those sections, Plaintiff seeks a disgorgement of all profits and restoration to consumers of those monies received through Defendants' unfair competition;

g. Based on Defendants' knowing and intentional use of a confusingly similar imitation of the Plaintiff QUSOME Mark, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

h. Defendants be required to pay to Plaintiff the costs and reasonable attorneys' fees incurred by Plaintiff in this action pursuant to 35 U.S.C. § 285 and pursuant to 15

U.S.C. § 1117(a) and other applicable law and the state statutes cited in this Complaint;

i.  This Court find that B.Glen and Keller's infringement and actions render this case an exceptional case within the meaning of 35 U.S.C. § 285 and that BioZone be awarded attorneys' fees;

j.  Based on Defendants' willful and deliberate infringement and/or dilution of the Plaintiff QUSOME Mark, and to deter such conduct in the future, Plaintiff be awarded punitive damages where specifically set forth under this Complaint;

k.  Plaintiff be awarded prejudgment and post-judgment interest on all monetary awards;

l.  Plaintiff be awarded a declaration of Judgment under 28 U.S.C. §2201.

m. Plaintiff be awarded costs of suit; and

n.  Plaintiff be granted such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff CCH hereby respectfully requests the following relief against Defendant Keller and Estalella as follows:

a.      For an order of damages, jointly and severally, including exemplary damages in an amount to be proven at trial and for such other relief as this Court deems just and proper.

---

Complaint                         25                    BioZone v. B.Glen, et al.

**JURY DEMAND**

Plaintiffs hereby demand that all issues be tried by a jury under FED. R. CIV. P. 38(b).


Dated: January 30, 2020                    COSTALAW, a professional corporation

                                           /Joseph P. Costa/

                                           _____
                                           Joseph P. Costa, Esq.
                                           Darius Anthony Vosylius, Esq.
                                           Attorneys for Plaintiffs BioZone Laboratories,
                                           Inc. and Creative Concepts Holdings, LLC